1

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2

 3   - - - - - - - - - - - - -     X

 4   MARGARET THEVENIN,            :
                                           17-CV-5974(CBA)
 5            Plaintiff,           :

 6             -against-          :     United States Courthouse
                                       Brooklyn, New York
 7   DETECTIVE COOPER, et al.,    :
                                       June 29, 2020
 8            Defendants.         :     3:00 o'clock p.m.

 9   - - - - - - - - - - - - -     X

10
                     TRANSCRIPT OF ORAL ARGUMENT
11          BEFORE THE HONORABLE CAROL BAGLEY AMON
                 UNITED STATES DISTRICT JUDGE.
12

13   APPEARANCES:

14   For the Plaintiff:          TAMARA M. HARRIS, ESQ.
                                 111 Broadway - Suite 706
15                               New York, NY 10006

16
     For the Defendant:          OFFICE OF THE CORPORATION COUNSEL
17                               NYC LAW DEPARTMENT
                                 OFFICE OF THE GENERAL COUNCIL
18                               100 Church Street
                                 Special Federal Litigation Division
19                               New York, NY 10007

20                               BY: AMATULLAH KHALIHA BOOTH, ESQ.

21
     Court Reporter:             Charleane M. Heading
22                               225 Cadman Plaza East
                                 Brooklyn, New York
23                               (718) 613-2643

24
     Proceedings recorded by mechanical stenography, transcript
25   produced by computer-aided transcription.
```

1          (All present by teleconference.)

2          THE CLERK:  This is Thevenin versus Cooper, et al.,

3   17-CV-5974, on for oral argument.

4          THE COURT:  For the plaintiffs, would you state your

5   appearance, please?

6          MS. HARRIS:  Sure.  It's Tamara Harris on behalf of

7   the plaintiff Margaret Thevenin.

8          THE COURT:  All right.  And for the defendant?

9          MS. BOOTH:  Good afternoon, Your Honor.  Amatullah

10  Booth for the defendant.

11         THE COURT:  All right.  There are a number of open

12  issues on the pending motion and perhaps the first issue we

13  want to take up is the Fourth Amendment claim against the

14  individual officers.

15         Ms. Booth, do you want to be heard on that claim?

16  This is the 1983 search claim.

17         MS. BOOTH:  Yes.

18         THE COURT:  There is not a statute of limitations

19  issue here as far as I understand except with regard to the

20  individual defendant not having been named.

21         MS. BOOTH:  Yes, Your Honor, that's correct.  So

22  because there are no -- the only defendant that is named has

23  no connection at all to the search.  We believe that, it is

24  our position that, that the statute of limitations has run

25  because there's no named defendant but also, they were in hot

3

1  pursuit of a suspect which permitted and allowed the search of

2  plaintiff's property.

3       THE COURT:  Well, that's not something that can be

4  decided on a motion to dismiss.  How can you decide that on a

5  motion to dismiss?

6       Even if they were in hot pursuit, the search has to

7  be reasonable and based on the allegations in the complaint,

8  it wouldn't be a reasonable search.  So how do you think you

9  would prevail on a motion to dismiss on that claim, on that

10 ground, rather?

11      MS. BOOTH:  Yes, Your Honor.  So based on the

12 allegations that are in the complaint, we believe that the,

13 that there's no way that a jury could find that the search was

14 unreasonable based on the damage that's been alleged.

15      The allegations are that a table was broken, a frame

16 was cut and that the pool had a hole in it, that they

17 punctured the pool, punctured a hole in the pool while

18 searching for, both the individual as well as the firearms,

19 and based on the fact that plaintiff had conceded and admitted

20 that there was an individual that identified her property as

21 the property where the suspect ran to and through, the firearm

22 was recovered right behind her property, we believe that

23 all --

24      THE COURT:  The firearm was recovered right behind

25 her property, is that in the complaint?

4

1          MS. BOOTH:  No.  It's in the paperwork that was,

2   that was represented -- one second.  It was, it was referenced

3   in the paperwork.  Actually, it was actually referenced in her

4   notice of claim, plaintiff's notice of claim.  She states that

5   the firearm was recovered behind her backyard.

6          THE COURT:  And so if the notice --

7          MS. BOOTH:  In the claim, in the plaintiff's notice

8   of claim.

9          THE COURT:  Well, how much discovery have you had in

10  this case?

11         MS. BOOTH:  As far as -- I mean, plaintiffs have not

12  produced much but we, defendants, have produced several

13  documents related to the search as well as some of the

14  criminal, the criminal matter, the underlying criminal matter.

15  Our defenses are based on the plaintiff's complaint as well as

16  what's referenced in the complaint which is, which are the two

17  notices of claim as well as the order to show cause.

18         THE COURT:  As well as what?

19         MS. BOOTH:  The order to show cause that was filed

20  in state court.

21         THE COURT:  What order to show cause?

22         MS. BOOTH:  Plaintiffs filed an order to show cause

23  seeking leave to file a late notice of claim in state court

24  and in that order to show cause, there were several documents

25  including plaintiff's first late notice of claim where

5

1  plaintiff details the facts surrounding the search and admits

2  in that paperwork that individuals identified her property as

3  a property where the suspect ran through which is why the

4  officers searched her property.  They never entered her home.

5  They searched her yard and so that's, that is what we're

6  relying on in our motion.

7          THE COURT:  You referenced that notice of claim in

8  your motion papers?

9          MS. BOOTH:  Yes, Your Honor, as well as the order to

10  show cause.

11          THE COURT:  Let me turn to Ms. Harris.

12          Ms. Harris, you've never named the individual

13  defendants.

14          MS. HARRIS:  We didn't, correct, Judge.

15          THE COURT:  Why haven't you named them?  What have

16  you done to find out who they are?

17          MS. HARRIS:  We don't know who they are and we had a

18  conference with Judge Gold and Judge Gold has ruled that -- as

19  an initial matter, Ms. Booth served me with initial

20  disclosures which had, I think, three people identified where

21  the subject matter of their testimony was not identified.  I

22  produced a photograph to Judge Gold showing, I think, at least

23  six officers entering the property and leaving the property

24  and I asked Judge Gold to compel her to identify those people.

25  Clearly, they outnumbered that which was put in her initial

6

1  disclosures.

2         Judge Gold has said that her obligation to identify

3  these people will not start to run until after plaintiff has

4  produced all the discovery that Ms. Booth has requested.  We

5  have at this point produced so much discovery.  I know she

6  claims we haven't, but we have given her everything

7  conceivably that we have, any photographs that we have.

8         THE COURT:  When did you first -- this case was

9  brought in 2017, correct?

10        MS. HARRIS:  Correct.

11        THE COURT:  When did you first make any request of

12  the defendants for the identity of these officers?

13        MS. HARRIS:  I believe it was around, I think -- I

14  might be wrong about dates because I don't have them in front

15  of me, Your Honor, but January, I think, of this year when

16  Judge Gold set the schedule for when initial disclosures would

17  be exchanged so it was around that period of time.

18        THE COURT:  You made a request for the identity of

19  the officers who conducted the search when?

20        MS. HARRIS:  Yes.  I think -- at the time,

21  Judge Gold ordered that it be served, I think it was, like,

22  January 20-something that we had that conference, so right --

23  immediately thereafter, I believe.

24        THE COURT:  What date was your complaint filed?  Let

25  me see.

7

1        MS. BOOTH:  October 12, 2017 the complaint was

2   filed.

3        MS. HARRIS:  But there were multiple motions to

4   dismiss filed by Ms. Booth's predecessor as well before she

5   even came on board.  This is the second or third motion that

6   they've filed so there hasn't been discovery in this case.

7   Your Honor, Judge Gold, in January, he had set a schedule for,

8   at that point, depositions and a schedule for --

9        THE COURT:  Do you have some discovery requests that

10   you can point to where you asked them for the identity of

11   these officers?  You have to show --

12        MS. HARRIS:  Yes, I have the motion to compel.

13        THE COURT:  -- that the statute of limitations has

14   passed for you to satisfy Hogan versus Fisher.  You've got to

15   show that you diligently pursued this.  How do you show that?

16        MS. HARRIS:  Well, there was a motion to dismiss

17   from her predecessor so there was no discovery and initial

18   disclosures were delayed.

19        THE COURT:  Who delayed them?  Who delayed them?

20        MS. HARRIS:  Well, Judge Gold had set a schedule in

21   January of this year for initial disclosures and I think we

22   had conferences with Judge Gold, I don't remember exactly,

23   probably about discovery before Ms. Booth became involved in

24   the case, I'm assuming.  I don't have it all in front of me

25   but I know that discovery was definitely delayed because of

8

1   the pending motion practice.

2         THE COURT:  When did you make a request for the

3   identity of the officers?  When did you do that?

4         MS. HARRIS:  It would have been, I believe, January

5   of 2020.

6         THE COURT:  Do you have some document--

7         MS. HARRIS:  Yes, I do.

8         THE COURT:  -- that shows that?

9         So it wasn't until January that you made the

10  request?

11        MS. HARRIS:  Of 2020.

12        THE COURT:  Ms. Booth, what is your position on

13  this?  You don't develop this issue very well yourself.

14        MS. BOOTH:  We are --

15        THE COURT:  You say that the statute has passed but

16  you don't really analyze the cases.

17        MS. BOOTH:  Well, so, Your Honor, our position is

18  that the statute of limitations have passed.

19        THE COURT:  Well, why, if she names them now, does

20  it not relate back to the original filing?  If she were to

21  amend the complaint to add the people now, why wouldn't it

22  relate back?

23        MS. BOOTH:  Because she's barred from doing so

24  because it's beyond the statute of limitations.  She made

25  absolutely no effort to identify these officers prior to the

9

1    expiration of the statute of limitations.  As she's admitted,

2    the first time any request was made was well after the statute

3    of limitations have passed and the statute of limitations have

4    passed and that was January of 2020 and that was only after

5    the judge, the judge directed us to engage in discovery.

6           I've had several cases where plaintiff cannot

7    identify someone and before anything really happens in the

8    case, they ask us, hey, we need this or that paperwork so we

9    can identify the other officers.  That never happened in this

10   case and there was nothing preventing plaintiff from making

11   those requests and seeking that information.  So defendant's

12   position is that it's very, you know -- there's not, you

13   know -- the argument is basically that the statute of

14   limitations have passed, there's been no effort on plaintiff's

15   part to identify the officers so after the statute of

16   limitations has passed, she cannot really pass any claims

17   through an amended complaint at this point.

18          MS. HARRIS:  Judge, the first conference that I

19   recall, I don't know, there may have been a prior one with

20   Judge Gold, but I think this was one of the first ones where

21   he broached discovery and I did raise it and he did say put it

22   in the demand and I did put it in the demand and I set up a

23   motion to compel the information because it wasn't included in

24   their initial disclosures which the City was obligated to give

25   to me.  I had to produce a photograph to Judge Gold showing

1    there were six officers entering her property.

2            THE COURT:  When did you do all of this?

3            MS. HARRIS:  This was when we first began

4    conferences about discovery in front of Judge Gold.

5            THE COURT:  You don't have to wait until then to

6    make the request of the City.  Why didn't you make a request

7    of the City right after you filed the complaint?  You knew

8    that you didn't know who these John Doe officers were.

9            MS. HARRIS:  My understanding of it was there was no

10   discovery.  I don't remember if there was a delay.  I don't

11   recall what had happened with her predecessor.  I know there

12   were several conferences about it.  I just -- sitting here,

13   like, without looking at the history of it, I don't remember

14   every single conference or the details that might have been

15   discussed with Judge Gold about it.

16           THE COURT:  Why didn't you make the request at the

17   first conference that you had?

18           MS. HARRIS:  I think, actually, if I -- I don't

19   remember if it was with Ms. Booth or her predecessor.  There

20   may have been a conference where I mentioned to Judge Gold I

21   wanted to subpoena something and I think there was an issue

22   where either he wasn't prepared at that time to engage in

23   that, in subpoenas, because I think I wanted to subpoena the

24   DA file or something along those lines.  He had indicated the

25   issues were very limited to property damage and he wasn't

11

1   inclined at that time to do that, but I don't remember if that

2   was with Ms. Booth or her predecessor because the case is -- I

3   don't recall exactly.

4           MS. BOOTH:  Your Honor, there's absolutely no record

5   of that and I spoke with --

6           THE COURT:  No one has told me -- no one has

7   actually briefed this one way or the other as to the facts of

8   what happened with respect to this request.  Isn't that the

9   issue that the Court has to decide in terms of whether I

10  should permit this to relate back to the filing of the

11  complaint?

12          The filing of the complaint was it wasn't, as to the

13  search question wasn't barred as a Fourth Amendment claim, the

14  statute hasn't passed as to the claim, but there's no Monell

15  claim with respect to the search.  The allegations aren't

16  sufficient to support a Monell claim, but they may very well

17  be sufficient to support a claim against the two officers but

18  I don't know anything aside from the fact of you all are, you

19  know, taking different positions now as to what the diligence

20  was.

21          You haven't shown me, Ms. Harris, what you did to

22  obtain this information.  I don't have any facts about this at

23  all other than you are just trying to sort of remember what

24  you did during these conferences but how am I supposed to

25  resolve this based on that kind of record?

12

1          MS. BOOTH:  Your Honor, I actually do think that

2   plaintiff made no attempt to obtain that information.  I also

3   referenced the notice of claim where plaintiff points out and

4   admits all the factors that establish the hot pursuit.  It

5   was -- it's my understanding that, therefore, thereafter, it's

6   plaintiff's duty and burden to establish that he made such a

7   request.

8          There's nothing for defendants to reference because

9   there were no requests made.  I've reviewed the entire file.

10  I spoke with the preceding attorney.  There was never a demand

11  or request for any identification of any officer.  And so

12  that's why --

13         MS. HARRIS:  There wasn't a formal --

14         MS. BOOTH:  There was no action taken by plaintiff

15  to obtain this information.  Aside from that, I'm not sure

16  what else we could have, you know, there's nothing else we can

17  relate to, I'm sorry, reference, because there was nothing

18  else that -- no conversation about getting the identity of

19  these officers ever came up until we had our first conference.

20  Actually, it wasn't even during the conference.  It was after

21  the conference when she was trying to file her -- I'm sorry --

22  after the conference when she eventually served us with

23  demands via e-mail that we first had a request for this

24  information.

25         THE COURT:  When was that, the e-mail?

13

1          MS. BOOTH:  Just one second.  I can pull it up.

2          MS. HARRIS:  That was mailed right after the

3  conference.  Ms. Booth said she never received it.  It was

4  then e-mailed to her and the reason why --

5          MS. BOOTH:  I believe it was January 22nd of this

6  year.

7          THE COURT:  Of this year, three years after the

8  lawsuit is brought?  That's the first time you tried to get

9  this information?

10          MS. HARRIS:  No, it's not.  That's what I'm trying

11  it say.  I don't think -- in terms of requesting it in a

12  formal demand, that is the first time, when Judge Gold held

13  that conference and he set a schedule.  In terms of discussing

14  it, I'm pretty confident that we did discuss it and the issue

15  of me subpoenaing the DA file was discussed but, and I believe

16  it was Judge Gold and I believe it was Ms. Booth's predecessor

17  was of the opinion that this was a limited issue of property

18  damage and that's a premature situation.

19          THE COURT:  Well, did you ask them at that point in

20  time for the names of the officers and did Judge Gold tell you

21  you weren't entitled to the names of the officers?

22          MS. HARRIS:  Judge Gold --

23          THE COURT:  There's a difference between asking for

24  the DA's file and asking for the names of the officer.

25          MS. HARRIS:  No, I do not believe that -- well,

14

1    Judge Gold never said I was not entitled to the name of

2    officers.  That was the subject of the last conference where

3    he was ordering her to give me those names as of a few days

4    ago, when we spoke to Judge Gold on Friday.

5             MS. BOOTH:  That is not true either.  The judge did

6    not order me to do anything at this point because plaintiff

7    has not even complied with defendants' demands.

8             MS. HARRIS:  A motion to compel was denied --

9             MS. BOOTH:  Only --

10            THE COURT:  Don't talk over each other.

11            MS. BOOTH:  If I can just, yes, the only thing that

12   was requested during this conference last week was the

13   identity of the individuals that were in the photograph that

14   defendants produced to plaintiff of her pool, of the

15   plaintiff's pool, and there was actually no officers in that

16   photograph.

17            MS. HARRIS:  Okay.  So that's actually not accurate.

18   The motion to compel was denied pretty much in the entirety of

19   all of her demands --

20            MS. BOOTH:  It was not.

21            MS. HARRIS:  May I finish?

22            -- with the exception that Judge Gold had said that

23   there was a photograph of plaintiff in her pool with other

24   individuals and if plaintiff was able to ID those people and

25   he said plaintiff should provide the defense with

15

1    identification of people at her pool because they may have

2    knowledge and give a statement that she doesn't remember who

3    they are and try to date the photographs as best she can which

4    we agreed to do.

5            There was a component in my response, a cross-motion

6    to compel information from Ms. Booth who I have discussed the

7    ID of these people in a prior conference with Judge Gold and

8    she was reluctant to give it and that motion to compel

9    attached a photograph of the five or six officers who were

10   entering the property and leaving it and had asked that she

11   identify them.

12           THE COURT:  When did you file that motion with the

13   pictures of the officers?  When did you file the motion with

14   the pictures of the officers?

15           MS. HARRIS:  That was probably two weeks ago which

16   were in response to my communications with her where I asked

17   Ms. Booth to identify the people and I said I would move to

18   compel if she didn't give sufficient identification.  She

19   ignored that and then I did the motion to compel.

20           MS. BOOTH:  Your Honor, so that was less than, I

21   believe it was less than two weeks ago.  It was actually last

22   week that plaintiff filed that motion to compel.

23           MS. HARRIS:  There was an e-mail to Ms. Booth in

24   May.

25           THE COURT:  When, according to you, Ms. Booth, did

16

1   you first get a request for the identity of officers on the

2   day of the search?  What is your position on that?

3           MS. BOOTH:  I have February 27, 2020.  That was what

4   I received in an e-mail and that was not properly served but,

5   yes, that was the first time I received anything requesting

6   the identity of any officers.

7           THE COURT:  And was that when you got the picture?

8           MS. BOOTH:  I received the picture from one of the

9   officers after, I believe it was after that, that request, and

10  I produced the picture.  It was of the pool.  It was not of

11  officers.  And in her most recent, and when she -- I had to

12  file a motion to compel because I didn't receive hardly, like,

13  I didn't receive literally any documents and very little

14  information that I requested and as a result of that,

15  plaintiff's counsel then responded with a motion to compel

16  asking for the identity of the individual that took the

17  picture.  And then in the conference, she asked for the

18  identity of the officers that were depicted in the photograph

19  but there were no officers depicted in the photograph.

20          MS. HARRIS:  Judge, very important, to make it very

21  simple though, just none of this occurred until after,

22  three years after these claims, after the three years statute

23  of limitations.

24          THE COURT:  All right.  Excuse me.  Excuse me.

25  Excuse me.

17

1          I want plaintiff's counsel to provide the Court

2     within ten days of today's date with the document in which she

3     requested, in which plaintiff requested the identity of the

4     officers that conducted the search.

5          I take it that that would be the first time that you

6     made that request of the plaintiff, correct?  I mean, of the

7     defendants, I'm sorry.

8          MS. HARRIS:  The first time that -- well --

9          THE COURT:  I want you to document the first time

10    that you made a request of the defendant for the identity of

11    the officers who conducted the search.

12          MS. HARRIS:  That's fine, Judge.  May I just say one

13    thing because Ms. Booth, I think misspoke.

14          In terms of the photographs showing the officers,

15    that was not done three years after the litigation.  Pursuant

16    to your directive and Judge Gold's original directive when we

17    had original settlement conferences, I was ordered to produce

18    all the discovery that I had in advance of that settlement

19    conference, the first one.  I did that.  That included the

20    photograph.  This was the beginning.

21          THE COURT:  The photograph?  Who was in the

22    photograph?

23          MS. HARRIS:  The officers that conducted the search

24    and damaged this property.

25          THE COURT:  All right.  When you gave her that

18

1  photograph, that was in connection with the settlement

2  conference.  Did you ask her to tell you who those people

3  were?  That's not a request to tell the --

4          MS. HARRIS:  I had discussions with them about the

5  identity.

6          THE COURT:  What?

7          MS. HARRIS:  I believe it was her predecessor that I

8  had discussions with regarding the identity in terms of

9  subpoenaing the information.

10         THE COURT:  Did you ever subpoena the information or

11  request it?

12         MS. HARRIS:  No, Judge.  My recollection, and I

13  would have to go back over the history of it, was we spoke

14  with Judge Gold at some point in time, that's my recollection

15  of it, and he indicated it wasn't necessary to be subpoenaing,

16  but this was a bit and there were discussions and I believe it

17  might have been when my clients had even come in from

18  New Jersey when one of these conversations took place, but I

19  have to go back and look.

20         THE COURT:  Well, can you document that discussion?

21  Can you say you made a request?

22         MS. HARRIS:  I know that I -- it was discussed.  I

23  just don't remember the date.  I believe my client had come in

24  from New Jersey.

25         THE COURT:  Can you document it if it's disputed?

19

1          All right.  You address this issue in a letter

2    ten days from today's date.  Let me just get a calendar up

3    here.  I mean, this is mind boggling to me.  Hold on.

4          All right.  Today is the 29th.  Put that in a letter

5    to the Court by July 8th and you document when you made these

6    requests.

7          MS. HARRIS:  Okay.

8          THE COURT:  And any response to the letter has to be

9    filed by July 15th.

10         MS. BOOTH:  Yes, Your Honor.

11         THE COURT:  Is there any other part of the motion

12   that the defendant wished to address?

13         MS. BOOTH:  Yes, Your Honor.  There was just, I

14   guess, there's a lot of dates -- it's convoluted in this case

15   because of all the dates and the different defenses, but I

16   would like to just note just that, you know, plaintiff argued

17   that there were assurances made that are based on, related to

18   a fraud claim.

19         THE COURT:  Right.

20         MS. BOOTH:  However, the notice of claim, I think,

21   completely, would completely stop any tolling based on that

22   argument because, clearly, at that point, the plaintiff knew

23   that a notice of claim was required and that first notice of

24   claim was filed on November 16, 2015.  There was also a letter

25   and I'm not sure --

20

1          THE COURT:  Wait.  I don't understand why you claim

2    that the fraud claim is -- I'm sorry.  Maybe I don't even know

3    who's speaking now.

4          Ms. Booth, are you speaking?

5          MS. BOOTH:  Yes, Your Honor.  I'm only referring to

6    the tolling.  If the Court is inclined to toll the statute of

7    limitations from the date of the assurance or the alleged

8    fraud, my argument is that the tolling would not -- I would

9    think that the notice of claim filed in November would have,

10   would end any tolling that's related to that claim.

11         MS. HARRIS:  It's tolled from the time it was put

12   forth in evidence.

13         MS. BOOTH:  I know there's an argument that it

14   tolled from the time --

15         THE COURT:  It tolled from the time she filed her

16   notice of claim until it was entered, well, until the decision

17   was filed --

18         MS. BOOTH:  Yes.

19         THE COURT:  -- and provided a document that shows it

20   was filed, I think, in December.  So that is the period of

21   time that was tolled.

22         MS. BOOTH:  Okay.

23         THE COURT:  And that document -- it eliminates the

24   other claim, but I don't believe it eliminates the fraud

25   claim.

21

1        MS. BOOTH:  Well, the fraud claim is the state law

2   claim.

3        THE COURT:  I understand that but the fraud claim is

4   later in time.

5        MS. BOOTH:  Yes, it's later in time.  So the date of

6   the incident was --

7        THE COURT:  It says she couldn't have discovered the

8   fraud claim until May 18th.  That's when she, the day she

9   filed the late notice of claim.  That's when she filed, when

10  she realizes that they didn't file it or it wasn't happening.

11  So if you tolled that 203 day period, then the complaint was

12  filed several months before the expiration date.  So I don't

13  see how her fraud claim would be prohibited under that

14  argument because she's not aware of her fraud claim until

15  May 18th.  So I don't think her fraud claim is precluded.

16       MS. BOOTH:  I'm sorry, May 18, 2016?

17       THE COURT:  Yes.  The latest date she could have

18  discovered her fraud was May 18th of 2016 and then one year

19  and 90 days would have expired on August 16, 2017 absent

20  tolling, but if you take into account the 203 day tolling

21  period, it doesn't expire until March 7, 2018 and she filed

22  the complaint on October 12, 2017.  So that's what that claim

23  seems to say.

24       MS. BOOTH:  So we have the date of the accident or

25  incident report was May 21, 2015.

22

1          THE COURT:  No, but that's not -- that's when the

2    incident happened, but her fraud claim is different because

3    she's saying the fraud claim doesn't begin until she has

4    notice of the fraud.

5          MS. BOOTH:  Yes.

6          THE COURT:  Which is that they didn't file a claim

7    on her behalf.  So we know that at least as to May 18th of

8    2016, at that point, she knows it, so you count it from that

9    date.

10          MS. BOOTH:  Well, I was -- my argument is that it

11    is, the first notice of claim is when she would have known it

12    because she's filing the late notice of claim and that date,

13    the date of that notice of claim was actually November 16,

14    2015.

15          THE COURT:  But that's not the date she knows that

16    they didn't file her, didn't take care of her claim.  She

17    claims that Cooper told her that they were taking care of it.

18    That's the fraud.  She doesn't know that at that point in

19    time.  The statute of limitations on the fraud claim begins

20    when they obtain knowledge of facts in which the fraud could

21    have been discovered with reasonable diligence.  She doesn't

22    know that fact then.

23          MS. BOOTH:  Well, in her first notice of claim, she

24    acknowledges that she was told that the officer was going to

25    take care of it.  He did not and this is in the notice of

23

1   claim that's dated November 15, 2016 which, to me, would

2   suggest that she did have it as of that time.

3          THE COURT:  Did you want to be heard on that,

4   Ms. Harris?

5          MS. HARRIS:  I want to be heard on different levels

6   of that.

7          I just want to say, as an initial matter, the fraud

8   claim is not covered under the general municipal law.  The

9   general municipal law specifically delineates those claims

10  which are going to be under the one year and 90 day statute of

11  limitations and fraud is not one of them.  Anything related to

12  personal injury and damage to real property based on the

13  wrongful act of the City, yes, that is the one year, but the

14  fraud claim relates to misrepresentations after the fact,

15  after the damage to the property.  It's a distinct issue and

16  in the State of New York is six years.

17         This woman is still well within the statute of

18  limitations for a fraud claim so I don't even think, the whole

19  thing of tolling this and tolling that is irrelevant.

20         THE COURT:  Well, assuming I reject that argument,

21  what's your next argument?

22         MS. HARRIS:  My next argument is that she went to

23  the complaint court.  She obviously didn't know -- she had

24  been misled, according to her documents to the Supreme Court,

25  consistently by Officer Cooper and being told that they were

24

1    going to file a claim on her behalf.  Clearly, she filled out

2    the documents for that, but the misrepresentation based on the

3    allegations in her complaint which must be taken as true on a

4    motion to dismiss are that the misrepresentation continued and

5    was continuing until she got permission to file the late

6    notice of claim.

7            THE COURT:  When she filed the late notice of claim,

8    when she -- counsel referred to a document filed in May of

9    2015.  What was that?

10           MS. HARRIS:  Apparently, there was a notice of claim

11   that plaintiff didn't even know she filed.  The signature

12   line, I think when they put it up, they labeled is something

13   other than that like a loss report, but the signature line on

14   the document does indicate that it's a notice of claim.  So,

15   apparently, she did file it in '15, didn't know it had been

16   even filed, maybe she didn't know what she had submitted and

17   went to Supreme Court later on and complained that he promised

18   to pay her and she, you know, she sought permission to file a

19   late notice of claim which was granted.

20           THE COURT:  If she filed a notice of a claim in

21   2015, why did she need permission to file a late notice of

22   claim?

23           MS. HARRIS:  She essentially didn't.  -- apparently,

24   she didn't know that she had filed a document that was a

25   notice of claim and she apparently got permission.  So the

25

1    whole thing about her being late with her notice of claim, I

2    think she's filed two of them apparently.  She didn't realize

3    that there was one that she filed.  The words "Notice of

4    Claim" are not on the face of the document but they are found

5    on the signature line where it says it's a notice of claim.

6    Apparently, she didn't know that she had even done than and

7    she had been relying on the assurances that they would pay.

8    They told her they were going to file, she went to court, got

9    permission and filed another one.

10            THE COURT:  Well, the thing that was filed in 2015,

11   did she file it?

12            MS. HARRIS:  Yes, she did.  She apparently did.  She

13   didn't seem to know it.

14            MS. BOOTH:  May I be heard just to explain one

15   thing?

16            THE COURT:  Yes.

17            MS. BOOTH:  The reason why she filed two notices of

18   claim, so the first notice of claim was late and when she

19   filed it --

20            THE COURT:  In 2015, it was late?

21            MS. BOOTH:  Yes, Your Honor.

22            THE COURT:  I'm sorry.  Which one are you

23   defining --

24            MS. BOOTH:  The --

25            THE COURT:  Excuse me.

26

1           Which one are you claiming is the first notice of

2    claim?

3           MS. BOOTH:  I'm sorry, Your Honor.  So the first one

4    that was filed was the notice of claim that was dated

5    November 16, 2015 and that was filed by plaintiff.  She's

6    acknowledged that.  But the notice of claim pursuant to law

7    must be filed 90 days from the date of the incident.  So at

8    that point, it had been almost 200 days.  So that's why --

9           THE COURT:  Wait a minute.  I thought you said a

10   moment ago that a notice of a claim that she filed in May of

11   2015 said this, that and the other.

12          MS. BOOTH:  No.

13          THE COURT:  I thought you were referencing yourself

14   an earlier document.

15          MS. BOOTH:  Your Honor, what I was referencing was

16   the assurances.  So the accident report was dated May 21,

17   2015.  That was when she said that the officer told her that

18   we were going to handle it, we're going to file a claim for

19   you.  That's the May date.

20          THE COURT:  But didn't you refer to that as a notice

21   of claim?

22          MS. BOOTH:  No, Your Honor.  What I was saying is --

23   what I was saying was that the assurances were on that date.

24   After, after that date when she filed a notice of claim, that

25   at that point, it shows that she had knowledge of the alleged

27

1    fraud because in her notice of claim, she even states that,

2    you know, I had went to the officers and they didn't help me,

3    they told me they were going to help me but they didn't help

4    me.  So at that point, she knew that a notice of claim was

5    required on the November 16th, 2015 date regarding the

6    May 2015 alleged fraud.

7            So when she filed a notice of claim in November of

8    2015, the Comptroller's office sent her a letter that was

9    dated December 15, 2015 telling her that it was disallowed

10   because it was late and because of that, plaintiff had to then

11   file the order to show cause in state court.

12           THE COURT:  And you reference this -- excuse me.

13   This whole history you're giving me now is referenced in your

14   papers somewhere?

15           MS. BOOTH:  Yes.  Yes, Your Honor.

16           THE COURT:  Where?  Show me where.  Tell me where.

17           MS. BOOTH:  This one was in the notice -- this one

18   was in a different motion.  It probably was in the motion for

19   the search.  Can I just have a moment because I know I filed a

20   few.  That was in the motion I filed regarding the actual

21   fraud.

22           (Pause.)

23           THE COURT:  I don't see it referenced in your papers

24   that you filed on September 5th of 2018.

25           MS. BOOTH:  Yes.  I don't believe it's in the motion

28

1   regarding the search.  It's in the --

2        THE COURT:  Well, this deals with state law claims

3   that are barred by the statute of limitations and you don't

4   mention any of this.  You just say -- you don't talk anything

5   about any notice of a claim or anything being filed.  You

6   don't say anything about the fraud claim there.

7        Ms. Cohen, do you know where that might be

8   addressed?

9        THE LAW CLERK:  I think she's referring to the

10   September 26, 2019 filing.

11        THE COURT:  Okay.  All right.

12        THE CLERK:  Counsel will correct me if I'm wrong.

13        THE COURT:  January 6, 2020?

14        THE CLERK:  I think the filing is dated

15   September 25, 2019.

16        THE COURT:  When?

17        THE CLERK:  September 25, 2019.

18        THE COURT:  All right.  We are not making much

19   progress here.  I want those two letters that I referenced,

20   the plaintiff's letter and a response, and I'll reserve

21   decision.

22        The briefing on this, I have to say, by both parties

23   has not been helpful.  It has been very confusing.

24        All right.  I am going to end the conference.

25        (Matter concluded.)